# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| **NUCLEAR FUEL SERVICES, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 2:16-cv-00315 |
| ) | REEVES/CORKER |
| **UNITED STEEL, PAPER and FORESTRY** ) | |
| **RUBBER, MANUFACTURING, ENERGY,** ) | |
| **ALLIED-INDUSTRIAL and SERVICE** ) | |
| **WORKERS INTERNATIONAL UNION, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Gary Smalling worked for Nuclear Fuel Services (the Company) at its facility in Erwin, Tennessee. Smalling was terminated after he violated safety rules at the facility. The Union defendants submitted a grievance and the parties participated in arbitration pursuant to their Collective Bargaining Agreement (CBA). The arbitrator issued an award reinstating Smalling to active duty.

The Company filed the instant action asserting that the arbitration award should be vacated because the arbitrator exceeded his authority and his award is not supported by or

1

derived from the parties' CBA and is based on the Arbitrator's subjective considerations of fairness and equity. The Union, on the other hand, asks the court to affirm the Arbitrator's award reinstating Smalling to active duty. The parties have filed cross-motions for summary judgment. For the reasons that follow, the Union's motion for summary judgment is granted and the award of the Arbitrator is affirmed.

## I. Background

The Company operates a nuclear fuel facility in Erwin. Tennessee that processes highly enriched uranium into nuclear fuel. The Company is the sole provider of nuclear fuel for the United States Navy's fleet of nuclear-powered aircraft carriers and submarines.

The Union and the Company are parties to a CBA that covers all production and maintenance employees, laboratory technicians, plant clerical employees, surveillance technicians, radiation technicians, yard, and material handlers. The CBA in Article 14, provides for submission to an arbitrator of "any grievance concerning the interpretation or application of any provision" of the CBA. The parties further contracted that a "decision in writing of the arbitrator . . . shall be final and binding on the employee or employees concerned, the Union, and the Company." Article 3 of the CBA, "Management Functions," provides that the Company "retains the right to reprimand, suspend, discharge or otherwise discipline employees for proper cause."

Smalling, a thirteen-year employee at the Company, was terminated on April 1, 2015. The Union filed a grievance challenging his termination on April 8, 2015. The parties selected Arbitrator Joe M. Harris to resolve the grievance, and a hearing was held on January 21, 2016. Both parties submitted post-hearing briefs. The Arbitrator issued an Opinion and Award on July 11, 2016. The Arbitrator framed the issue submitted to him as "whether termination of an employee with 13 years of service was too severe" for the conduct in question. The Arbitrator concluded that the Company failed to show that it acted in accordance with the CBA when it discharged Smalling, and ordered him reinstated with half back pay.

The Arbitrator found that Smalling's discharge was based on an incident that occurred on February 27, 2015. On that day, a supervisor asked Smalling to dispose of mop heads containing highly enriched uranium. Smalling testified that he packaged eight mop heads into a five gallon liner, sealed it, put a transportation and waste sticker on it attesting that there was no visible contamination and no visible liquids in the bag, and placed it at the top of the ramp. The problem with disposing of multiple mop heads in a single plastic bag is that if the mop heads were used improperly or the user did not realize he or she had picked up enough uranium during use, the combined presence of uranium on the mop heads could set off a nuclear reaction. Smalling testified that he did not know the procedure regarding mop heads, but found out after the fact that he "messed up" and made

3

a mistake. The Arbitrator found that Smalling had violated a written procedure that required that only one mop head be placed in a single container. The Arbitrator considered testimony that the amount of nuclear material in the container for the eight mop heads was 2 grams and that it takes a minimum of 820 grams of material to create a nuclear reaction.

The Arbitrator also reviewed two additional incidents involving Smalling. First, the Arbitrator noted that Smalling had received a five-day suspension in October of 2014, for an alleged violation of a work rule prohibiting the movement of nuclear material during a "stop movement" order. Second, the Arbitrator considered an incident for which Smalling received a verbal warning on March 13, 2014. Because the Company "Rules on Reprimand, Suspension and Discharge" provide that when an employee worked for a period of 12 months without a reprimand, "he shall revert to Step 1," the Arbitrator concluded he was barred from considering the 2014 verbal warning as part of the progressive discipline leading up to the April 2015 termination.

The Arbitrator proceeded to consider whether Smalling's discharge was for "proper cause." The Arbitrator found: "When the Grievant's entire work record is considered as a whole, the two mistakes work out to about one mistake every six and ½ years. In that context, even conceding the obvious danger of handling fissile materials, two mistakes over an otherwise flawless 13 year career leading straight to an employee's termination is just too harsh, and therefore unjust." The Arbitrator further found that Smalley did not

"dispose of mop heads every day; in fact his testimony that he had 'never' disposed of mops was uncontradicted . . . . When the Grievant said he wasn't familiar with the particular rule he violated, the Company's response was that he should have been." The Arbitrator concluded "it would not be fair to characterize what the Grievant did as 'misconduct.' He was discharged for allegedly making two mistakes over a period of about 13 years and he has never denied or tried to hide anything he did." Thus, the Arbitrator sustained the grievance and reinstated Smalling to active duty, but only awarded him one-half of his lost wages.

## II.  Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Judicial review of an arbitration decision is "very limited." *Tenn. Valley Auth. v. Tenn. Valley Trades & Labor Council*, 184 F.3d, 510, 514-15 (6th Cir. 1999) (Review of an arbitration award is "one of the narrowest standards of judicial review in all of American jurisprudence"). Courts are not authorized to review an arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties'

agreement. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). If an arbitrator "is evenly arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.*

This approach reflects "a decided preference for private settlement of labor disputes without the intervention of government." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987). Because the parties contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, "it is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept." *Id.* at 37-38. Accordingly, it is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses "his own brand of industrial justice" that his decision may be vacated. *Id.*

The court's scope of review is limited to three questions: (1) did the arbitrator act outside his authority by resolving a dispute not committed to arbitration; (2) did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award; and (3) in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or apply the contract?" *Mich. Family Resources., Inc. v. SEIU Local 517*, 475 F.3d 746, 753 (6th Cir. 2007). So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even if the

arbitrator made "serious, improvident or silly errors in resolving the merits of the dispute." *Id.*

### III. Discussion

The Company does not allege that the Arbitrator committed fraud or other misconduct. Instead, the Company argues the Arbitrator acted outside the scope of his authority by improperly modifying the CBA and failing to construe the contract, thereby imposing his own brand of industrial justice. Specifically, the Company argues that the Arbitrator failed to consider Article 10 of the CBA and applied his own interpretation of what constituted "proper cause" for termination. The Company avers that once the Arbitrator determined that Smalling did not comply with the Company's policies, rules and practices, then Article 10 vests total discretion in the Company to impose discipline including discharge.

Article 3 of the CBA states that the Company "retains the right to reprimand, suspend, discharge or otherwise discipline employees for proper cause." Article 10 of the CBA defines one type of "proper cause," stating "Failure to comply with established policies, rules and practices shall be proper cause for suspension and discharge of employees." No definition of "proper cause" appears anywhere other than Article 10.

The Union responds that the Company waived any argument regarding interpretation of Article 10 by not presenting that argument to the Arbitrator. Generally,

"arguments not presented to an arbitrator are deemed waived and cannot be raised for the first time in an enforcement action in district court." *Armco Employees Independent Fed'n, Inc. v. ARK Steel Corp.*, 149 Fed. Appx. 347, 352 (6th Cir. 2005). Here, the Company's post-hearing brief framed the issue submitted for the Arbitrator's consideration: "Was Grievant's Discharge in Accordance with the CBA? If not, What shall be the Remedy?" The Company failed to argue that Article 10 or any other provision of the CBA restricts the Arbitrator's authority to craft an appropriate remedy. The Union argues that by explicitly granting the Arbitrator authority to decide the remedy for a discharge that violates the CBA, the Company waived its right to argue to this court that the Arbitrator had no authority to modify the discipline. The court agrees. *In Container Corp. of Am. v. United Paperworkers Int'l Union*, the district court held that the employer waived the right to challenge the scope of the arbitrator's power because "having instructed the arbitrator to determine the appropriate remedy," the employer "may not challenge the arbitrator's power simply because it disagrees with the result." *Id.* 1994 WL 803270 at *6 (C.D.Cal. Mar. 31, 1994). Such is the case here. Accordingly, the court finds the Company waived any argument under Article 10 of the CBA.

As argued by the parties before the Arbitrator, Article 3 of the CBA, "Management Functions" provides that the Company retains the right to discharge or otherwise discipline employees for "proper cause." Article 3 does not define "proper cause," and the arbitrator

interpreted Article 3 to give him the authority to modify the discipline imposed. The Arbitrator's interpretation of the contract is accorded deference by the court. It is "the language of the CBA and the arbitrator's own construction thereof, which determines the scope of the arbitrator's authority." *Eberhard Foods, Inc. v. Handy*, 868 F.2d 890, 892 (6th Cir. 1989). An arbitration award my not be overturned unless it is "clear" the Arbitrator "exceeded the scope of the submission." *Int'l Ass'n of Machinists & Aero Workers v. Tenn. Valley Auth.*, 155 F.3d 767, 772 (6th Cir. 1998).

Here, the Arbitrator construed the CBA to give him authority to review and modify the discipline. In the absence of a contractual provision that expressly limited or removed that question from the Arbitrator, the Arbitrator did not exceed his authority. *Dixie Warehouse & Cartage Co. v. Gen. Drivers, Warehousemen & Helpers*, 898 F.2d 507, 511 (6th Cir. 1990). The CBA does not address whether an arbitrator has authority to evaluate the degree of discipline, thus, the contract is susceptible to more than one interpretation. Courts resolve doubts over arbitrability in favor of coverage. *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004). Therefore, the court will defer to the arbitrator's interpretation of the CBA as extending to the severity of the discipline imposed for the violation.

In any event, regardless of whether the Company waived any argument, Article 10 does not mandate discharge as the sole penalty for Smalling's conduct. The law in the

9

Sixth Circuit is clear that when a contract does not "clearly" prescribe that the sole issue for arbitration is whether a violation of the work rules has occurred or that the arbitrator cannot modify the discipline imposed by the employer, the arbitrator retains authority to find that a particular discipline is too severe, and may modify it accordingly. *Oakwood Healthcare, Inc. v. Oakwood Hosp. Employees Local 2568*, 615 Fed. Appx. 302, 306 (6th Cir. 2015); *Dixie*, 898 F.2d at 508; *Eberhard*, 868 F.2d at 892.

In his award, the Arbitrator discussed evidence that not all violations of safety rules resulted in discharge and sometimes violations did not result in discipline. The Arbitrator found, contrary to the position taken by the Company that any violation of a safety rule merits termination, the actual practice of the employer is to recognize "degrees of danger" within the safety rules and to apply discipline accordingly. The Arbitrator further found that it was regularly Company practice to issue suspension for violations of safety rules. In fact, Smalling was issued a 5-day suspension for violation of the "stop movement" order in October 2014. The evidence presented to the Arbitrator showed that violations of safety rules resulted in a range of discipline, not automatic termination. Therefore, it was within the Arbitrator's authority to review and modify the discipline imposed on Smalling. Nothing in the CBA provides that violation of a safety rule automatically constitutes proper cause for immediate termination. Article 10 references "suspension" and "discharge," and the Company Rules provide for "suspension subject to discharge." It either case, it is clear

that discharge in not the only available penalty. Accordingly, the court finds that the Arbitrator was arguably construing or applying the CBA and acted within his authority by modifying the discipline and reinstating Smalling.

Next, contrary to the Company's position, the Arbitrator's award does not violate public policy. The Company does not cite to a specific and explicit public policy barring Smalling's reinstatement, but argues in general that the Arbitrator's award violates public policy favoring strict application of safety rules in the nuclear industry. In rare instances, a court may vacate an arbitration award that violates public policy. In order to vacate an award on public policy grounds, the public policy at issue must be explicit, "well defined," and "dominant." It must be ascertained by reference to laws and legal precedents and not from general considerations of supposed public interests. *Shelby Cnty Health Care Corp. v. Am. Fed. State, Cnty & Municipal Empl*. 967 F.2d 1091, 1095 (6th Cir. 1992); *see also Tenn. Valley Auth.*, 184 F.3d at 520 (public policy did not bar reinstatement of employee terminated because of the employer's safety concerns).

Lastly, the Union asks for an award of attorney's fees and costs because the Company's attempt to vacate the Arbitrator's award demonstrates "bad faith in the instigation or conduct of litigation." Although the court does not agree with the arguments presented by the Company, the court does not find that its arguments were brought in bad faith. Accordingly, the Union's motion for an award of attorney's fees and costs is denied.

## IV. Conclusion

Nuclear Fuel's motion for summary judgment [R. 17] is **DENIED;** the Union's motion for summary judgment [R. 20] is **GRANTED in part and DENIED in part:** the decision of the arbitrator is **AFFIRMED,** but the request for attorney's fees and costs is **DENIED.**

**ORDER TO FOLLOW.**

*/s/ Pamela L. Reeves*
**UNITED STATES DISTRICT JUDGE**